**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 15-cv-01473-MSK-CBS

**REBECCA COLAIZZI,**

    Plaintiff,

v.

**FIRE PROTECTION SERVICE CORPORATION, d/b/a Mountain Alarm,**

    Defendant.

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Defendant, Fire Protection Service Corporation d/b/a Mountain Alarm (FPS)'s Motion for Summary Judgment (**# 22**), Plaintiff, Rebecca Colaizzi's, Response (**# 24**), and FPS's Reply (**# 28**). Also before the Court is Plaintiff's Motion to Restrict (**# 27**).

### I. Jurisdiction

Ms. Colaizzi asserts a claim under Title VII, 42 U.S.C. § 2000e, and the Court exercises jurisdiction over this claim pursuant to 28 U.S.C. § 1331. The Court exercises jurisdiction over Ms. Colaizzi's related state law claim under 28 U.S.C. § 1343.

### II. Relevant Undisputed Facts[1]

The following is an abbreviated summary of the facts; relevant details are discussed with more specificity in the Court's analysis.

---

[1] Consistent with Fed. R. Civ. P. 56, the Court views the evidence in the light most favorable to the non-movant; here, Ms. Colaizzi. Where disputed, the Court accepts facts presented by Ms. Colaizzi as true.

FPS is a business that installs home and building alarm systems designed to alert fire and police departments in the event of an emergency. Ms. Colaizzi began working at FPS in 2008 as an administrative assistant. In 2010 she was promoted to office manager.

As office manager, Ms. Colaizzi was responsible for overseeing administrative functions including the processing of alarm system contracts and invoicing service tickets (requests for work from preexisting customers). Prompt processing of contracts was essential to FPS' business. Until a contract was processed, a customer's alarm was non-functional and law enforcement agencies did not have the relevant information necessary to respond to an emergency. In other words, if an alarm went off before a contract had been processed, no emergency assistance would be dispatched to the customer's address. This exposed the customer to risk and FPS to potential liability. Similarly, the prompt billing of service tickets was important to FPS' cash flow.

Ms. Colaizzi initially performed her job well. In 2011, she was commended for her work ethic, but urged to focus on delegating work to subordinates. In 2012, she received the "Employee of the Month" award, and in June of 2013 she was given a raise.

Near the end of 2012 or early 2013, FPS acquired Rocky Mountain Alarm. As a result of the expansion, Ms. Colaizzi's workload increased substantially, and two administrative staff members from Rocky Mountain Alarm were hired to assist her. Despite the extra staff, Ms. Colaizzi fell behind in her work, particularly with regard to processing contracts and billing service tickets. Ms. Colaizzi told her supervisor, Craig Simonds, that she was behind in these tasks and that she was unable to timely complete the increased volume of work. She also maintains that she requested help but none was provided.

Mr. Simonds was concerned about Ms. Colaizzi's failure to keep up with the processing of contracts and the billing of tickets, and as a result had regular meetings with her. In September

2013, Mr. Simonds met with Michael Bailey, FPS' Chief Financial Officer, and Karen Hockins, a human resources representative, regarding Ms. Colaizzi's performance. Mr. Simonds and Mr. Bailey contemplated either terminating Ms. Colaizzi's employment or moving her to another position. However, no action was taken at that time because, based on his conversations with Ms. Colaizzi, Mr. Simonds still "had full trust that she would get [her job duties] handled."

Ms. Colaizzi left work for maternity leave on October 14, 2013. Before leaving, she informed FPS of several other issues: 1) that there was a problem with closing service tickets; 2) that several service tickets had not been entered into the correct database, and as a result customers had not been billed for work done by FPS technicians; and 3) that she and another employee had had a conflict with one another, but that it had been resolved.

When Ms. Colaizzi began her maternity leave, Mr. Simonds and staff went to her office to determine what work needed to be done. To their surprise, they found more than 70 contracts that had not been processed. Of great concern was that some of the unprocessed contracts were not found in files or cabinets (where contracts were usually kept), but instead in the drawers of Ms. Colaizzi's desk. This discovery led Mr. Simonds to believe that Ms. Colaizzi had not been forthcoming with him about the extent to which she had fallen behind, that instead she had deliberately hidden much of her uncompleted work.

On November 6, while still on leave, Ms. Colaizzi was asked to meet with Mr. Simonds, Mr. Bailey, and Ms. Hockins. At that meeting, Mr. Simonds and Mr. Bailey told Ms. Colaizzi what they had discovered and that FPS intended to terminate her employment based on poor job performance. Later that day, FPS sent Ms. Colaizzi formal notice of her termination and the reasons therefore. The letter stated that FPS' decision was made because: 1) FPS employees found more than seventy unprocessed contracts, some more than a year old; 2) there were over 600

service tickets dating back to May of 2012 that had not been closed or billed; 3) Ms. Colaizzi had failed to enter emergency contacts and public safety agencies into customers records, undermining the purpose of those customers' security alarms; 4) Ms. Colaizzi had "broken relationships with the key staff members"; and 5) Ms. Colaizzi refused to accept management's offer for additional staff members. Ms. Colaizzi's employment was terminated effective immediately, and a new office manager, Christine Graverson, was hired.[2] Ms. Graverson did not have children.

Ms. Colaizzi asserts two claims against FPS: 1) discrimination in violation of Title VII based on pregnancy; and 2) defamation/ slander under Colorado law.[3] FPS moves for summary judgment on both claims.

### III.     Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). A trial is required if there are material factual disputes to resolve. As a result, entry of summary judgment is authorized only "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). A fact is material if, under the substantive law, it relates to an essential element of the claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the conflicting evidence would enable a rational trier of fact to resolve the dispute for either party. *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

For purposes of considering a summary judgment motion, substantive law specifies the

---

[2]   To the Court's knowledge, no record evidence indicates the exact date that Ms. Graverson was hired.

[3]   Previously asserted claims for violation of the Family Medical Leave Act and retaliation were voluntarily dismissed.

elements that must be proven for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). On summary judgment, the Court views the evidence presented in the light most favorable to the non-moving party, thereby favoring the right to trial. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

Motions for summary judgment generally arise in one of two contexts – when the movant has the burden of proof and when the non-movant does. Where the movant does not have the burden of proof, the movant must show that the non-movant lacks sufficient evidence to establish a *prima facie* case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party must identify why the record evidence reveals that the non-movant cannot establish a *prima facie* showing as to each element of a claim. *See Collins*, 850 F.3d at 1137. But, if the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, then a trial is required. Conversely, if the respondent's evidence is inadequate to establish a *prima facie* claim or defense, then no factual determination of that claim or defense is required and summary may enter. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

On the other hand, where the movant bears the burden of proof (as is the case with FPS' motion for summary judgment on an affirmative defense to Ms. Colaizzi's defamation claim) the movant must come forward with sufficient, competent evidence to establish each element of its claim or defense. *See* Fed. R. Civ. P. 56(c)(1)(A). Presumably, in the absence of contrary evidence, this showing would entitle the movant to judgment as a matter of law. However, if the responding party presents contrary evidence establishing a genuine dispute as to any material fact, a trial is required and the motion must be denied. *See Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir.

2015); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

**IV.   Analysis**

  **A.  Pregnancy Discrimination Claim**

Discrimination on the basis of pregnancy is prohibited by Title VII, 42 U.S.C. § 2000e, *et seq.* Like many Title VII claims, this claim is analyzed pursuant to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Young v. United Parcel Serv., Inc.*, 135 S.Ct. 1338, 1353-54 (2015); *see also Jeffries v. State of Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998). Under this framework, the employee bears the initial burden to present a *prima facie* case. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). If the employee establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse action. *Jones*, 349 F.3d at 1266. If a legitimate, non-discriminatory justification for the adverse action is asserted, the burden then returns to the employee to demonstrate that the justification is pretextual and the true reason for the adverse action was unlawful discrimination. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1120 (10th Cir. 2000).

FPS does not dispute that Ms. Colaizzi can establish a *prima facie* case: 1) she belongs to a protected class; 2) she suffered an adverse employment action (termination); and 3) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See, e.g., E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). Instead, FPS argues that it terminated Ms. Colaizzi for a legitimate, non-discriminatory reason – poor job performance as outlined in the letter of termination.

An employer's burden to show a legitimate, non-discriminatory reason for termination is "exceedingly light." *Swackhammer v. Sprint/ United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir.

2007). *See Furnco Const. Corp. v. Waters*, 438 U.S. 567, 578 (1978); *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir. 1992). Poor performance by an employee is a quintessentially legitimate and nondiscriminatory reason. *E.g., Garrett v. Hewlett Packard Co.*, 305 F.3d 616, 621 (10th Cir. 1994). Taken as true, FPS's justifications constitute a facially legitimate, non-discriminatory reason for termination of employment.

The question before the Court is whether Ms. Colaizzi can come forward with competent evidence that creates a genuine dispute of fact that FPS' justifications are pretext for discrimination. *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1125 (10th Cir. 2005). In some instances, a plaintiff might offer evidence showing that the employer's stated reasons are weak, implausible, inconsistent, incoherent, suffer from contradictions, or are simply false. *Kendrick v Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). In other situations, a plaintiff may focus on the timing of the employer's actions relative to its decision. *See Plotke v. White*, 405 F.3d 1092, 1105 (10th Cir. 2005). But, temporal proximity alone is insufficient to establish pretext. *Id.*; *Lobato v. N.M. Environmental Dep't*, 733 F.3d 1283, 1293 (10th Cir. 2013); *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1213 (10th Cir. 2007). The sequence of events must be viewed in the context of the record as a whole, and must include consideration of the defendant's explanation for its timing. *Bird v. West Valley City*, 832 F.3d 1188, 1204 (10th Cir. 2016).

Ms. Colaizzi does not dispute that she fell behind and failed to timely process FPS contracts or promptly bill tickets. Indeed, she acknowledges that the failure to do so could be grounds for termination of her employment. She argues instead, that FPS' explanation is suspect

7

because of the timing[4] of its decision to terminate her employment – during her maternity leave when FPS knew earlier that she was behind in her work.[5]

FPS concedes that it was generally aware that Ms. Colaizzi was behind in her work before her maternity leave, but it had no idea of the severity of the problem until it discovered more than seventy unprocessed contracts in her office and learned the extent of unbilled tickets. These discoveries fundamentally changed its assessment of Ms. Colaizzi's non-performance – it revealed a more severe problem and caused Mr. Simonds to doubt Ms. Colaizzi's honesty and reliability.

FPS offers evidence that upon search of Ms. Colaizzi's office, Mr. Simonds discovered at least 70 unprocessed contracts (some more than a year old). This was many more contracts than Mr. Simonds had previously understood were outstanding. In addition, contracts were found in Ms. Colaizzi's desk drawers rather than stored on shelves or in files as was customary in the office. This led Mr. Simonds to conclude that Ms. Colaizzi had purposely concealed her unfinished work before taking leave. He testified: "I was very disappointed when I found, you know, the magnitude of contracts that were not processed." In addition, Mr. Simonds stated that he found numerous contracts that Ms. Colaizzi had haphazardly entered into databases that did not contain correct

---

[4] Ms. Colaizzi offers no direct evidence of any discriminatory animus, and acknowledges that FPS has policies in place to aid working mothers, and that her coworkers seemed excited for her to have a baby. She alludes to an argument that her replacement, Ms. Graverson, did not have children, but offers no elaboration.

5 Ms. Colaizzi suggests that FPS' statement that it discovered how far behind she was in her work only after she took maternity leave, is incredible because FPS chose a replacement office manager before she left on leave. FPS states that it discussed the position with Ms. Graverson, an office manager located in Arizona on October 17, 2013 (three or four days after Ms. Colaizzi went on leave). Ms. Colaizzi surmises that FPS began discussions earlier because she saw Ms. Graverson in FPS officers on October 18, 2013 when she went in to get some work. Taken as true, Ms. Graverson's presence at FPS offices on October 18 is not probative of whether conversations about her filling the office manager position took place before or after Colaizzi's leave began on October 14.

8

information. He believed she "intentionally pulled the rug over [his] head and told [him] that she was caught up." This discovery was ultimately "what was the deciding factor and what put me over the edge, if you will."

FPS also discovered that Ms. Colaizzi failed to bill many service tickets. Mr. Bailey testified that during Ms. Colaizzi's leave, he received a call from another FPS employee, Chris Leno, who reported that there was a serious problem with outdated service tickets. Mr. Bailey learned that some 600 to 1,000 tickets had been left open. FPS stated in its letter to Ms. Colaizzi that this failure may have cost FPS $10,000 in unbilled revenue, as well as dissatisfaction from customers billed unduly late.

Ms. Colaizzi disputes FPS' aspersions as to her integrity,[6] but she offers no evidence that rebuts the factual evidence proffered by FPS. She has not come forward with evidence to contradict the number of unperformed contracts, the manner in which they were discovered or number of unbilled tickets discovered during her maternity leave. Importantly, even though Ms. Colaizzi spoke generally with Mr. Simonds about being behind, there is no evidence that Ms. Colaizzi disclosed, or that FPS otherwise knew of, the severity of the backlog before Ms. Colaizzi left on maternity leave. Although Ms. Colaizzi states there was "never a time" when she did not apprise Mr. Simonds of her status and progress, she does not allege that she informed him as to specific numbers of unprocessed contracts or unbilled tickets. The Court accepts, as true, Ms. Colaizzi's representation that she asked Mr. Simonds for help with her tasks on "several

---

6 The Court's role in employment cases is not to act as a super personnel department and second-guess business decisions with the benefit of hindsight. *See Kendrick v. Penske Transp. Serv.*, 220 F.3d 1220, 1233 (10th Cir. 2000). Instead, the Court examines the facts as they appeared to the decision maker at the time. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).

occasions"[7] and approached Mr. Simonds to see if she could train him to assist her with billing. But, general statements and requests for assistance do not rebut FPS' evidence that it was surprised by the severity of the backlog problem and was previously unaware of the number of contracts and tickets that were unfulfilled before Ms. Colaizzi began her leave.

In sum, there is no evidence to rebut FPS's showing that: 1) prior to Ms. Colaizzi's maternity leave it was unaware of the extent and severity of Ms. Colaizzi's unperformed work; 2) it discovered the extent and severity of the problem after Ms. Colaizzi left for maternity leave; and 3) that Ms. Colaizzi's employment was terminated during her maternity leave due to the newly discovered severity of the problem and FPS' perception that she had concealed this severity. Because FPS has presented uncontroverted evidence justifying its reasons for terminating Ms. Colaizzi's employment when it did, the mere fact that FPS' decision was made during Ms. Colaizzi's maternity leave alone is insufficient to demonstrate pretext.

Because there is no genuine dispute as to pretext there is no need for a trial. FPS has established a legitimate, non-discriminatory reason for terminating Ms. Colaizzi's employment. Accordingly, judgment is properly entered in favor of FPS on the claim of unlawful pregnancy discrimination.

### B. Defamation/Slander

FPS also requests summary judgment in its favor on Ms. Colaizzi's defamation claim. It seeks judgment on its affirmative defense of absolute privilege. Ms. Colaizzi's defamation claim is based upon statements made by FPS to the EEOC in response to Ms. Collaizzi's discrimination

---

[7]   FPS disputes that Ms. Colaizzi asked for help, and contends that she in fact turned down help when offered by FPS' CFO, Mr. Bailey. However, for purposes of this motion, the Court construes the evidence most favorably to Ms. Colaizzi's.

claim. Ms. Colaizzi asserts that FPS' statements were false, and therefore are defamatory under Colorado law.[8]

Assuming, without deciding, that statements made by FPS were false, the question is whether they are actionable. Certain defamatory statements are not actionable. For example, statements made in judicial or quasi-judicial proceedings are privileged. Quasi-judicial proceedings relate to, or involve adjudicative acts – that is, determinations of facts and applications of law. *See Black's Law Dictionary* (7th ed.1999). The purpose for insulating statements made in judicial or quasi-judicial proceedings from defamation liability is sound: there is a strong public interest that the participants in judicial and quasi-judicial proceedings provide complete and detailed information, and were participants to face risk of a civil defamation suit, their willingness to do so might be impaired. *See Walters v. Linhof*, 559 F.Supp. 1231, 1236-37 (D. Colo. 1983); *Edmond*, 2013 WL 535579, *7. In other words, excluding these such statements allows witnesses and parties to speak freely about their perceptions surrounding events related to a dispute, and in turn helps to ensure that a decision-maker has all information relevant to fairly resolving the dispute.

At least one decision from this district found that EEOC proceedings are quasi-judicial in nature, and thus, statements made in the EEOC process are privileged. *See: Edmond v. Pikes Peak Direct Marketing, Inc.*, No. 11-cv-02021-CMA-KLM, 2013 WL 535579, *7 (D. Colo. Jan. 17, 2013). This finding is consonant with many decisions outside the district. *See Cortez v.*

---

[8] To raise a defamation claim a plaintiff must offer evidence of: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff. *Walters v. Linhof*, 559 F.Supp. 1231, 1234 (D. Colo. 1983); *Williams v. Dist. Court,* 866 P.2d 908, 911 n. 4 (Colo.1993); *Lawson v. Stow*, 327 P.3d 340, 345 (Colo. App. 2014).

11

*Wright,* No. CIV 06–1198 JB/ACT, 2008 WL 4104133, at *11 (D.N.M. April 29, 2008); *Bernstein v. Seeman*, 593 F.Supp.2d 630, 636 (S.D. N.Y. 2009); *Shabazz v. PYA Monarch, LLC*, 271 F.SUpp.2d 797, 803 (E.D. Va. 2003); *Adams v. Gardner Construction Group,* No. CIV–07–722–C, 2008 WL 1767085, at *1 (W.D. Okla. April 16, 2008); *Arya v. Ensil Technical Services, Inc.,* No. 12–CV–925S, 2012 WL 6690326, at *4 (W.D.N.Y. December 19, 2012); *Carter v. Northrop Grumman Corporation,* No. 6:10–cv–1881–28GJK, 2011 WL 7116314, at *4 (M.D. Fla. Dec. 21, 2011).

The reasoning of these decisions is persuasive and Ms. Colaizzi has not provided any caselaw to the contrary. Therefore, the Court finds that the statements made by FPS in the course of the EEOC investigation are absolutely privileged, and as a consequence the claim for defamation must be dismissed.

## V.    Motion to Restrict

Finally, the Court addresses Ms. Colaizzi's Motion to Restrict (**# 27**). She seeks to preclude public view (Level 1 restriction) of Exhibit C (**# 23**) to FPS' Motion for Summary Judgment (**# 22**). Exhibit C is FPS' written response to the EEOC charges of discrimination. In it, FPS sets out its reasons for terminating Ms. Colaizzi's employment. Ms. Colaizzi argues that if this document is available to the public, it may hamper her ability to obtain future employment.

There is a well-established common-law right of access to judicial records. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This right is premised upon the idea that the public must retain the ability to evaluate a court's decision-making and ensure that it is promoting justice by acting as a neutral arbitrator. *See United States v. McVeigh*, 119 F.3d 806, 814 (10th Cir. 1997). A party seeking restriction must show that the public's right of access is outweighed by private interests favoring non-disclosure. *See id.* at 811.

Motions to restrict are governed by D.C.Colo.LCivR 7.2. This Rule requires a moving party to: (1) identify the document for which restriction is sought; (2) explain the interest to be protected and why such interest outweighs the presumption of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; and (4) explain why no alternative to restriction will suffice. *See* D.C.Colo.LCivR 7.2. In sum, the movant must articulate a real and substantial interest that justifies depriving the public of access to documents that informed the court's decision-making process. *See Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011). The fact that the parties agree to restriction does not dictate the Court's decision or change its analysis, as the right of access belongs to the public. *See* D.C.Colo.LCivR 7.2(c)(2).

The Court notes that Ms. Colaizzi has not complied with the specific requirements of D.C.Colo.LCivR 7.2. The injury she identifies is speculative, and she has not addressed with any specificity either the public's right of access or whether there is any measure short of restricting the public's access that could be used to protect her interests.

But in addition, the Court is not persuaded that the public's right should be compromised simply because FPS' response to the EEOC's inquiry is unflattering to Ms. Colaizzi. Ms. Colaizzi initiated this action, using a public forum to resolve her grievance with FPS. Resolution of her grievance involved consideration of FPS' statement to the EEOC regarding the reason for her dismissal. Thus, the contents of Exhibit C are pertinent to, and referenced in, this Court's opinion. In order to for the public to have confidence in the judicial process, it must be transparent. In this case, that means that the public must be able to review the evidence that the Court relied upon, regardless of whether it is favorable to Ms. Colaizzi. Accordingly, the Motion to Restrict is DENIED.

### VI.     Conclusion

The Court hereby **GRANTS** Defendant, FPS', Motion for Summary Judgment (**# 22**). On the first claim for relief, judgment will enter in favor of FPS and against Ms. Colaizzi. The second claim is dismissed with prejudice. Ms. Colaizzi's Motion to Restrict (**# 27**) is **DENIED.** The Clerk of Court shall enter a judgment consistent with this opinion and close this case.

DATED this 27th day of January, 2017.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Court